**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN   DISTRICT OF MISSISSIPPI
OXFORD DIVISION**

**JAMES M. GARDNER**                                                                        **PETITIONER**

**v.**                                                                                **No. 3:23CV51-MPM-JMV**

**PANOLA COUNTY, MISSISSIPPI
TATE COUNTY, MISSISSIPPI
MISSISSIPPI DEPT OF CORRECTIONS**                                    **RESPONDENT**

**MEMORANDUM OPINION**

This matter comes before the court on the *pro se* petition of James M. Gardner for a writ

of *habeas corpus* under 28 U.S.C. § 2254.   Gardner is currently in the custody of the Mississippi

Department of Corrections ("MDOC") and housed at the Central Mississippi Correctional

Facility ("CMCF") in Pearl, Mississippi.   The State has moved to dismiss the petition; Gardner

has not responded, and the deadline to do so has expired.   The matter is ripe for resolution.

Gardner challenges his 2018 plea and sentences for malicious mischief and felony fleeing

*and* the April 2022 revocation of his post-release supervision ("PRS") on the malicious mischief

charge and resulting eight-year sentence.   Doc. 1.   The challenges to his original plea and

sentences are untimely filed under the Anti-Terrorism and Effective Death Penalty Act of 1996

(AEDPA) and, alternatively, procedurally defaulted, and will be dismissed with prejudice.   *See*

28 U.S.C. § 2244(d).

Gardner's challenges to the revocation of his Post-Release Supervision ("PRS") on the

malicious mischief charge have not been exhausted with the state's highest court as required

under AEDPA and will thus be dismissed without prejudice.   *See* 28 U.S.C. § 2254(b) and (c).

In the alternative, his unexhausted revocation claims will be dismissed with prejudice for want of

substantive merit.   Further, Gardner's claim challenging the conditions of his confinement is not

cognizable through a petition for a writ of *habeas corpus* and will be dismissed without prejudice. In sum, for the reasons set forth below, the State's motion to dismiss will be granted, and the instant petition will be dismissed.

### *Habeas Corpus* **Relief Under 28 U.S.C. § 2254**

The writ of *habeas corpus*, a challenge to the legal authority under which a person may be detained, is ancient. Duker, The English Origins of the Writ of Habeas Corpus: A Peculiar Path to Fame, 53 N.Y.U.L.Rev. 983 (1978); Glass, Historical Aspects of Habeas Corpus, 9 St. John's L.Rev. 55 (1934). It is "perhaps the most important writ known to the constitutional law of England," *Secretary of State for Home Affairs v. O'Brien*, A.C. 603, 609 (1923), and it is equally significant in the United States. Article I, § 9, of the Constitution ensures that the right of the writ of *habeas corpus* shall not be suspended, except when, in the case of rebellion or invasion, public safety may require it. *Habeas Corpus*, 20 Fed. Prac. & Proc. Deskbook § 56. Its use by the federal courts was authorized in Section14 of the Judiciary Act of 1789.

*Habeas corpus* principles developed over time in both English and American common law have since been codified:

> The statutory provisions on *habeas corpus* appear as sections 2241 to 2255 of the 1948 Judicial Code. The recodification of that year set out important procedural limitations and additional procedural changes were added in 1966. The scope of the writ, insofar as the statutory language is concerned, remained essentially the same, however, until 1996, when Congress enacted the Antiterrorism and Effective Death Penalty Act, placing severe restrictions on the issuance of the writ for state prisoners and setting out special, new *habeas corpus* procedures for capital cases. The changes made by the 1996 legislation are the end product of decades of debate about *habeas corpus*.

*Id*. Under 28 U.S.C. § 2254, a federal court may issue the writ when a person is held in violation of the *federal* Constitution or laws, permitting a federal court to order the discharge of any person held by a *state* in violation of the supreme law of the land. *Frank v. Mangum*, 237 U.S. 309, 311, 35 S. Ct. 582, 588, 59 L. Ed. 969 (1915).

### Facts and Procedural Posture[1]

#### Guilty Plea and Sentences

James M. Gardner was indicted in Panola County Circuit Court Cause No. CR-2018-0148-JMP2 for felony fleeing (Count 1) and malicious mischief (Count 2) as a habitual offender under Miss. Code Ann. § 99-19-83.   SCR, CR-2018-0148-JMP2 at 1–2.   He pled guilty to felony fleeing and malicious mischief as a "§ 99-19-81 habitual offender" in Panola County Circuit Court.   *See* Exhibit A[2]; *see also* SCR, CR-2018-0148-JMP2 at 16–39, 44–66.[3]   On May 15, 2019, the trial court sentenced Gardner as a habitual offender under Miss. Code Ann. § 99-19-81 to serve five years in MDOC custody on Count 1 (felony fleeing) to run concurrently with any previously imposed sentence, with credit for time served in pretrial detention.   *See* Exhibit B; *see also* SCR, CR-2018-0148-JMP2 at 6–9, 14–15.   On Count 2 (malicious mischief), the trial court sentenced Gardner to a consecutive sentence of ten years with two years to serve in MDOC custody and eight years of PRS (two years of PRS reporting and six years non-reporting).   *See* Exhibit B; *see also* SCR, CR-2018-0148-JMP2 at 10–13, 40–43.

#### Revocation

The Panola County Circuit Clerk's Office issued its first affidavit for Gardner's violation of the terms of his PRS on September 12, 2020, citing his failure to report to his probation officer

---

[1]  The court has taken the facts and procedural posture of this case, with minor stylistic changes, from the State's motion to dismiss, as they are undisputed and well-documented.

[2]  The exhibits referenced in this memorandum opinion may be found attached to the State's motion to dismiss the instant petition.

[3]  The plea hearing transcript reflects that, in exchange for Gardner's plea, the State withdrew a petition to revoke Gardner's post-release supervision in another case (CR2003-4JMP1).   *See* SCR, CR-2018-0148-JMP2 at 65–66.

following his release from MDOC physical custody.[4]  SCR, CR-2018-0148-JMP2 at 67–68. The Panola County Circuit Clerk's Office issued a second affidavit on December 15, 2021, citing Gardner's failure to report to the MDOC probation office for four months.  SCR, CR-2018-0148-JMP2 at 69–70, 72–73.

On March 10, 2022, the State filed a "Petition to Revoke Post-Release Supervision," noting that Gardner had violated the terms of his PRS by "committing new crimes to wit:  On or about September 1, 2021, the Defendant committed the crimes of Armed Robbery and Possession of a Firearm by a Convicted Felon."  *See* Exhibit C; *see also* SCR, CR-2018-0148-JMP2 at 74–76.  Upon reviewing the State's petition to revoke, the court ordered that Gardner "serve the entire amount of time imposed in the original sentence" in MDOC custody.  *See* Exhibit C; *see also* SCR, CR-2018-0148-JMP2 at 74–76.  As a result, the trial judge appointed counsel to represent Gardner and set a revocation hearing.  SCR, CR-2018-0148-JMP2 at 77–78.  At the revocation hearing (SCR, CR-2018-0148-JMP2 at 117–34), the State presented the 2021 indictment for armed robbery and felon-in-possession of a firearm, noting that "a group of people have met, have heard the evidence or the proof that we put in front of them, and have found by the preponderance of the evidence that the charge[s] did occur."  *See* Exhibit D; *see also* SCR, CR-2018-0148-JMP2 at 121.[5]

The State also presented the testimony of a Panola County Sheriff's Deputy to support the armed robbery and felon-in-possession charges that served as the basis for the revocation.

---

[4] Documents related to this initial violation reflect that Gardner was released from MDOC custody on August 31, 2020. *See* SCR, CR-2018-0148-JMP2 at 68.

[5] At Gardner's revocation hearing, the trial judge observed that, despite being sentenced as a habitual offender, Gardner was released from MDOC custody on August 31, 2020, after serving less than two years of his sentences for felony fleeing and malicious mischief.  *See* Exhibit D; *see also* SCR, CR-2018-0148-JMP2 at 117–34.

- 4 -

*See* Exhibit D; *see also* SCR, CR-2018-0148-JMP2 at 121–29.   The State introduced two

exhibits at the hearing—the new indictment in Panola County Cause No. 2021-81SMP1 and

Gardner's prior indictments and sentencing orders as proof of his habitual status.   *See* Exhibit D;

*see also* SCR, CR-2018-0148-JMP2 at 84–116, 129–31.

    The trial court determined that the State had met its burden of proof for the revocation.

*See* Exhibit D; *see also* SCR, CR-2018-0148-JMP2 at 131.   On April 11, 2022, the court entered

an order to revoke Gardner's PRS and imposed a sentence of eight years as a habitual offender

under § 99-19-81—the remaining portion of Gardner's suspended sentence on the malicious

mischief conviction—with credit for time in custody awaiting the hearing.   *See* Exhibit E; *see*

*also* SCR, CR-2018-0148-JMP2 at 82–83.

    Following Gardner's revocation, the trial judge entered a "Negotiated Order to Remand"

Counts 1 and 2 (armed robbery and felon-in-possession of a firearm as a habitual offender under

§ 99-19-83) in Cause No. 2021-81-SMP1 because Gardner "[was] revoked for 8 years as a 99-

19-81 habitual offender 2018 -148 JMP2."   *See* Exhibit F; *see also* SCR, CR-2021-81-SMP1 at

4–6.

**Gardner Has Not Initiated Any State Post-Conviction Proceedings**

    The Panola County Circuit Court Clerk's Office confirmed that, as of the date of the

instant motion to dismiss (March 29, 2023), Gardner had filed no motions for post-conviction

relief in that court challenging his May 15, 2019, plea and sentence for malicious mischief.

Section 99-39-5(2) of the Mississippi Code provides that a petitioner challenging a guilty plea

must file any post-conviction action no later than three years after the judgment of conviction is

entered, absent limited circumstances set forth in the statute.   Gardner's time to seek post-

- 5 -

conviction relief in state court challenging his plea and sentences has thus expired unless he meets one of those limited circumstances.

Gardner similarly filed no pleadings challenging the revocation, as confirmed by both the records of the Mississippi Supreme Court, as posted on the Court's official website, and the Panola County Circuit Court Clerk's Office, through a deputy clerk.

### Gardner Has Not Initiated Any Grievances Regarding Revocation Through the Administrative Remedy Program

Gardner alleges throughout his petition that he has filed grievances with the MDOC Administrative Remedy Program ("ARP") related to some claims in his federal *habeas corpus* petition. Doc. 1. However, MDOC ARP officials informed the State that Gardner has filed no ARP grievances on his revocation.

### Federal *Habeas Corpus* Proceedings

Gardner initially filed his federal petition for a writ of *habeas corpus* in the United States District Court for the Southern District of Mississippi. Doc. 1. However, in early March 2023, that court transferred the case to this court, as Gardner was challenging the revocation on his Panola County plea and sentence (and Panola County lies within this court's territorial jurisdiction). Doc. 3.

In his petition, Gardner makes a litany of bare allegations related to his malicious mischief plea and sentence and the revocation of the suspended portion of his sentence on that conviction. With a liberal construction of his claims, Gardner argues that: (1) He is unlawfully held in MDOC for the malicious mischief plea and sentence and subsequent revocation imposing the remainder of the sentence on that plea because there was allegedly no property destroyed or damaged; (2) He should have been sentenced on the revocation to ninety days in a Technical Violation Center ("TVC") instead of eight years; (3) The "arresting case" that precipitated the

- 6 -

State's petition to revoke his PRS was passed to the files in April 2022 and, thus, he was improperly revoked; (4) His indictment for malicious mischief was defective because "he could have bought new Lowe['s] trailers"; (5) His eight-year sentence imposed for the revocation is illegal because it exceeds the five years allowed under state law; (6) MDOC staff "stole" his ARPs and legal mail; (7) Two bench warrants were issued in violation of his right to protection from double jeopardy; and (8) His attorney "knew that he gave [Gardner] false representation [because] he knowing[ly] persuade[d] [him] to sign[] a plea to a non[] property damage case" (Doc. 1 at 11).  *See* Doc. 1.

Gardner also argues that he is entitled to an evidentiary hearing.  Doc. 1.  In his prayer for relief, he requests that he be released from MDOC custody because his 2018 criminal case "was a property damage [case] that no property was damaged or destroyed."  Doc. 1 at 15.

### The One-Year Limitations Period Has Expired for Challenges To Gardner's Plea and Sentences

Decision in this case is governed by 28 U.S.C. § 2244(d), which provides:

(d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of –

>       (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

>       (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or the laws of the United States is removed, if the applicant was prevented from filing by such State action;

>       (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

>       (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State postconviction or other collateral review with respect to the pertinent judgment or claim is pending shall not

be counted toward any period of limitation under this subsection.

28 U. S.C. § 2244(d)(1) and (2).

### Gardner's Conviction Became Final on August 13, 2019

On May 15, 2019, the trial court sentenced Gardner on his guilty plea to Count I (felony fleeing) and Count II (malicious mischief). *See* Exhibit B; *see also* SCR, CR-2018-0148-JMP2 at 6–15, 40–43. Under state law, there is no direct appeal from a guilty plea. Miss. Code Ann. § 99-35-101. However, a Mississippi petitioner's guilty plea becomes final under the AEDPA ninety days after sentencing on his plea—when the time for seeking direct review of the guilty plea in the Supreme Court would expire. *See Wallace v. Mississippi, et al.*, 43 F.4th 482, 497–501 (5th Cir. 2022). Hence, Gardner's conviction became final on August 13, 2019 (May 15, 2019 + 90 days) – when the time for seeking review in the Supreme Court expired. *Id.*

### Statutory Tolling Does Not Apply

Gardner initially had one year from August 13, 2019—until August 13, 2020—to timely file his federal petition for a writ of *habeas corpus* challenging his plea and sentences in Panola County. As set forth above, Gardner has not sought post-conviction relief challenging his plea and sentences – and thus does not benefit from statutory tolling. *See* 28 U.S. C. § 2244(d)(2) (allowing statutory tolling for a properly filed motion for post-conviction or other collateral review); *see also Jones v. Lumpkin*, 22 F.4th 486, 490 (5th Cir. 2022) (holding that petitioner was not entitled to statutory tolling because "he never 'properly filed' a state habeas application during the limitations period"); *Grillette v. Warden*, 372 F.3d 765, 769 (5th Cir. 2004). As such, his federal *habeas corpus* deadline remained August 13, 2020.

### Equitable Tolling Does Not Apply

"The doctrine of equitable tolling preserves a [petitioner's] claims when strict application of the statute of limitations would be inequitable." *United States v. Patterson*, 211 F.3d 927,

- 8 -

930 (5th Cir.2000) (per curiam) (internal quotations omitted). The one-year limitations period of the Anti-Terrorism and Effective Death Penalty Act ("AEDPA") in 28 U.S.C. § 2255(f) is not jurisdictional; thus, it is subject to equitable tolling. *United States v. Wynn*, 292 F.3d 226, 230 (5th Cir.2002). For this reason, a district court may toll the AEDPA limitations period. *Id.* at 229–30.

The decision whether to apply equitable tolling turns on the facts and circumstances of each case. *Felder v. Johnson*, 204 F.3d 168, 171 (5th Cir.2000); *see also Alexander v. Cockrell*, 294 F.3d 626, 628 (5th Cir.2002) (per curiam). However, a court may apply equitable tolling only "in rare and exceptional circumstances." *Davis v. Johnson*, 158 F.3d 806, 811 (5th Cir.1998); *see also Minter v. Beck,* 230 F.3d 663, 666–67 (4th Cir.2000) ("[E]quitable tolling of the AEDPA's one year limitation period is reserved for those rare instances where – due to circumstances external to the party's own conduct – it would be unconscionable to enforce the limitation period against the party and gross injustice would result.") (quotation omitted).

The petitioner bears the burden of establishing that equitable tolling is warranted. *See Phillips v. Donnelly*, 216 F.3d 508, 511 (5th Cir.), modified on reh'g, 223 F.3d 797 (2000) (per curiam). In order to satisfy his burden, the petitioner must show "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way" of timely filing his § 2255 motion. *Lawrence v. Florida*, 549 U.S. 327, 127 S.Ct. 1079, 1085, 166 L.Ed.2d 924 (2007). A petitioner's delay of even four months shows that he has not diligently pursued his rights. *Melancon v. Kaylo*, 259 F.3d 401, 408 (5th Cir. 2001).

Gardner provided no entry as to paragraph 18 of the instant petition to explain why the court should find his petition to be timely. Doc. 1 at 13–14. Gardner has alleged no facts to show that "extraordinary circumstances" existed – that he was actively misled or prevented from

asserting his rights and timely seeking federal *habeas corpus* relief. As such, he does not enjoy equitable tolling of the one-year limitations period.

Indeed, equitable tolling would not apply even if Gardner *had* shown rare and exceptional circumstances, as he did not pursue his rights diligently. *See Holland v. Florida,* 560 U.S. 631, 649 (2010) (*citing Pace v. DiGuglielmo,* 544 U.S. 408, 418 (2005)) (holding that petitioner must show that "he has been pursuing his rights diligently") (quoting *Pace,* 544 U.S. at 418). Gardner was sentenced on his plea in May 2019, and the trial court revoked his PRS in April 2022. He has not exhausted his available state post-conviction remedies challenging his plea and sentences or the revocation. He did not file his federal petition until February 2023—nearly four years after his plea – and almost a year after his revocation. Gardner's petition challenging his original plea and sentences thus remained due in this court by August 13, 2020.

### Gardner's Challenge to His Original Plea and Sentences Is Untimely

Under the prison "mailbox rule," the instant *pro se* federal petition for a writ of *habeas corpus* is deemed filed on the date the petitioner delivered it to prison officials for mailing to the district court. *Coleman v. Johnson,* 184 F.3d 398, 401, *reh'g and reh'g en banc denied,* 196 F.3d 1259 (5th Cir. 1999), *cert. denied,* 529 U.S. 1057, 120 S. Ct. 1564, 146 L.Ed.2d 467 (2000) (citing *Spotville v. Cain,* 149 F.3d 374, 376-78 (5th Cir. 1998)). In this case, the federal petition was filed sometime between the date it was signed on January 1, 2023, and the date it was received and stamped as "filed" in the district court on February 24, 2023. Thus, the instant petition was filed nearly two and one-half years after the August 13, 2020, filing deadline. For these reasons, as to Gardner's challenge to his original plea and sentences, the State's motion to

dismiss will be granted, and these grounds for relief will dismissed with prejudice and without evidentiary hearing as untimely filed under 28 U.S.C. § 2244(d).[6]

### Gardner's Challenge to Revocation of Post-Release Supervision Are Unexhausted

Gardner's petition also challenges the revocation of his PRS— a claim that he has not presented to the state's highest court.   As such, his challenge to the revocation should be dismissed for failure to exhaust state court remedies.   28 U.S.C. § 2254(b)(1) and (c) provide in part:

> (b)(1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that –
>
> > (A)      the applicant has exhausted the remedies available in the courts of the State; or
> >
> > (B)(i) there is an absence of available State corrective process; or
> >
> > (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.
>
> (c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

28 U.S.C. § 2254(b)(1) and (c).

A petitioner who seeks federal *habeas corpus* relief under 28 U.S.C. § 2254 must first exhaust all claims in state court.   *See* 28 U.S.C. § 2254(b)(1) and (c); *Parr v. Quarterman*, 472

---

[6] At this point, any attempt to exhaust Gardner's claims regarding his plea and sentences for malicious mischief and felony fleeing would be untimely filed under state law.   *See* Miss. Code Ann. § 99-39-5(2) (Mississippi's three-year limitations period for seeking post-conviction collateral relief).   Hence, those claims are, alternatively, procedurally defaulted, as State court records confirm that Gardner has not filed a motion for post-conviction relief challenging his plea and sentences in the state's highest court.   *See Finley v. Johnson*, 243 F.3d 215, 220 (5th Cir. 2001) ("If a petitioner fails to exhaust state remedies, but the court to which he would be required to return to meet the exhaustion requirement would now find the claims procedurally barred, then there has been a procedural default for purposes of federal *habeas corpus* relief.")

F.3d 245 (5th Cir. 2006); *Fisher v. Texas*, 169 F.3d 295, 302 (5th Cir. 1999); *see also Whitehead v. Johnson*, 157 F.3d 384, 387 (5th Cir. 1998).   To satisfy the exhaustion requirement, a federal *habeas corpus* petitioner must generally present his claims to the state's highest court in a procedurally proper manner – and provide that court with a fair opportunity to consider the claims.   28 U.S.C. § 2254(b) and (c); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842–45 (1999); *see also Dupuy v. Butler*, 837 F.2d 699, 702 (5th Cir. 1988); *Carter v. Estelle*, 677 F.2d 427, 442–44 (5th Cir. 1982).

A petitioner may exhaust his claims in state court by pursuing them through one complete cycle of either state direct appeal or post-conviction collateral proceedings.   *Busby v. Dretke*, 359 F.3d 708, 724 (5th Cir. 2004).   In addition, exhaustion "requires that normally a state prisoner's entire federal *habeas* petition must be dismissed unless the prisoner's state remedies have been exhausted as to all claims raised in the federal petition."   *Graham v. Johnson*, 94 F.3d 958, 968 (5th Cir. 1996) (citations omitted).   Gardner has not exhausted state court remedies as to his challenge to revocation of post-release supervision; as such, in the alternative, the instant petition for a writ of *habeas corpus* will be dismissed without prejudice for that reason.   28 U.S.C. § 2254(b)(1) and (c).

### Gardner's Claims Regarding Revocation Are Also Without Substantive Merit

The AEDPA requires total exhaustion as a prerequisite for a district court to grant a petition for federal *habeas corpus* relief; however, the district court may *deny* a petition on the merits despite the failure of the applicant to exhaust state court remedies.   28 U.S.C. § 2254 (b)(1)(A), (b)(2); *see also Neville v. Dretke,* 423 F.3d 474, 480-482 (5th Cir. 2005).   Hence, this court may, in the alternative, deny Gardner's unexhausted claims for relief either on the merits or as procedurally barred, rather than dismissing the claims challenging the revocation as

- 12 -

unexhausted. *See Alexander v. Johnson*, 163 F.3d 906, 908 (5th Cir. 1998) (holding that the district court may deny relief on an unexhausted claim).

In this case, Gardner's claims challenging the revocation are either contrary to the record or meritless. Regarding his revocation, Gardner argues that: (1) He should have been sentenced on the revocation to ninety days in a TVC instead of eight years in MDOC; (2) The "arresting case" that precipitated the State's petition to revoke his post-release supervision was passed to the files in April 2022; as such, he was improperly revoked; (3) His eight-year sentence imposed for the revocation is illegal because it exceeds the five years allowed under state law; and (4) Two bench warrants were issued in violation of his right to protection from double jeopardy.[7]

First, Gardner's claim that he should have been sentenced to ninety days in a TVC on the revocation is simply contrary to existing state law. Although the initial affidavits for revocation were, indeed, for technical violations of his PRS, Gardner's PRS was *not* revoked for a technical violation. Instead, *it was revoked because he committed new felonies*, and the "guiding statute [for that type of revocation] is Mississippi Code Annotated section 47-7-37.1," rather than the statute governing technical violations. *See Amerson v. State,* 325 So. 2d 1225 (Miss. Ct. App. 2021) (new felonies – shown by a preponderance of the evidence – merit imposing the suspended sentence, rather a sentence of ninety days or less in a TVC). Hence, the trial court's revocation and imposition of Gardner's eight-year suspended sentence was proper under state law.

In addition, Gardner's claim that his revocation is improper because the "arresting case"

---

[7] Gardner's other claims challenge either his original plea and sentences or the conditions of his confinement.

was passed to the files is contradicted by both the record and state law.   As set forth above, the charges in Gardner's new indictment for armed robbery and felon-in-possession of a firearm as a habitual offender under Miss. Code Ann. § 99-19-83 were remanded to the files in a "Negotiated Order to Remand."   *See* Exhibit F; *see also* SCR, CR-2021-81-SMP1 at 4–6.   As such, Gardner received the benefit of having those charges—two new crimes each charged as a habitual offender with a potential life sentence—passed to the files.   Having enjoyed that benefit, he may not now argue that his negotiated agreement to pass those charges to the file renders his current revocation invalid.

In any event, a conviction on the new charge is unnecessary for revocation; the State need only show that it was more likely than not that Gardner violated the terms of his probation.   *See, e.g., Fairley v. State*, 138 So. 3d 280, 282 (Miss. Ct. App. 2014).   At Gardner's revocation hearing, the State presented the new indictment and the testimony of the arresting officer.   *See* SCR, CR-2018-0148-JMP2 at 117–34.; *see also Williams v. State*, 334 So. 3d 177, 181 (Miss. Ct. App. 2022) (discussing the State's burden in a revocation proceeding).   Based on that evidence, the trial court held that the State had met its burden of proof for revocation.   *Id.*

Third, Gardner, citing Miss. Code Ann. § 47-7-34, contends that his eight-year sentence imposed for the revocation is illegal because it exceeds the five years allowed under the state statute governing supervised release.   Doc. 1.   Gardner has misinterpreted state law on this issue.   He was originally sentenced to ten years for Count 2, malicious mischief, with two years' incarceration and eight years on PRS—two years of reporting PRS and six years of non-reporting.   *See* Exhibit B; *see also* SCR, CR-2018-0148-JMP2 at 10–13, 40–43.   His PRS was revoked in April 2022, less than a year after his release from MDOC custody.   *See* Exhibit E; *see also* SCR, CR-2018-0148-JMP2 at 82–83.

- 14 -

Section 47-7-34 of the Mississippi Code limits the length of time that MDOC may *supervise* inmates on PRS; however, the "clear language of the statute does not limit the *total number of years of [PRS]* to five years." *Williams,* 334 So. 3d at 184–85 (citation omitted) (emphasis added). Hence, "while supervised probation is limited to five years, [the total time for PRS] is not." *Id.* at 184 (citation omitted). In the present case, Gardner was originally sentenced to ten years—two to serve and eight on PRS; as such, the court's order did not exceed the maximum sentence authorized for malicious mischief. *See* Miss. Code Ann. § 97-17-67(4) (maximum of ten years). Gardner's claim arguing that he should not have been sentenced to more than five years at the time of his revocation is contrary to state law and is thus meritless.

Finally, Gardner argues that two bench warrants were issued in violation of his right to protection from double jeopardy. Doc. 1. Gardner did not identify which two warrants he believes led to a double jeopardy violation; however, his claim fails no matter which warrants the court might consider, as all the warrants involved revocation. "[A] petition to revoke probation or to revoke suspension of a sentence is not a criminal case and not a trial on the merits of the case and therefore double jeopardy does not apply." *See Williams*, 334 So. 3d at 184–85; *see also Osborne v. U.S. Dist. Court, Southern Dist. of Miss.*, 132 F.3d 1456, 1997 WL 803105 (5th Cir. 1997) (unpublished) ("The Double Jeopardy Clause does not apply to parole revocation hearings.") (citing *Cortinas v. United States Parole Comm'n*, 938 F.2d 43, 46-47 (5th Cir. 1991)). This claim is without substantive merit.

For these reasons, Gardner's claims challenging the revocation and imposition of his eight-year suspended sentence will alternatively be dismissed with prejudice for want of substantive merit.

**The Petitioner's Request for Evidentiary Hearing Will Be Denied**

- 15 -

Gardner mentions in his petition that he would like an evidentiary hearing (Doc. 1 at 3), but he is not entitled to one. A petition for a writ of *habeas corpus* neither determines a petitioner's guilt or innocence, nor to retries his case; instead, resolution of the petition determines whether the petitioner's constitutional rights have been violated. *Herrera v. Collins,* 506 U.S. 390, 400–01 (1993) (citations omitted); *Ellis v. Collins,* 956 F.2d 76, 78 (5th Cir. 1992). Facts found in a *habeas corpus* evidentiary hearing must, then, bear on whether the trial or appeal of the criminal case violated the petitioner's constitutional rights. Given the clarity of the record before the court, a hearing is not necessary to rule on Gardner's petition.

Title 28 U.S.C. § 2254(e)(2) sets the standard for deciding whether an evidentiary hearing is necessary – and states that a federal court may not grant an evidentiary hearing on claims that a *habeas corpus* petitioner *could have* developed in state court proceedings – unless two criteria are met. First, in order for the court to hold an evidentiary hearing, the claim must rely on a new rule of constitutional law, expressly made retroactive to cases on collateral review. 28 U.S.C. § 2254(e)(2)(A). Second, an evidentiary hearing is appropriate when the factual predicate for the claim could not have been previously discovered with *due diligence*. *Id.* Then, once those criteria are met, a petitioner must show that the proffered facts underlying the claim "would be sufficient to establish *by clear and convincing evidence* that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense." 28 U.S.C. § 2254(e)(2)(B) (emphasis added).

Gardner has not shown that, under the requirements of 28 U.S.C. § 2254(e)(2), he would be entitled to an evidentiary hearing. Indeed, he has made no argument to support his request for a hearing. The claims in his petition challenging his plea and sentences are untimely filed and procedurally defaulted, and the claims challenging his revocation are both unexhausted and

without merit. *Guillory*, 303 F.3d at 649–50 n.5 (citing 28 U.S.C. § 2254(e)(2)). As the facts in the record clearly support these conclusions; an evidentiary hearing would be superfluous. For these reasons, Gardner has not shown that an evidentiary hearing is warranted under 28 U.S.C. § 2254(e)(2) and Rule 8 of the Rules Governing Section 2254 Cases in the United States District Courts. His request for a hearing will therefore be denied.

### A Conditions of Confinement Claim Is Not Cognizable in a *Habeas Corpus* Proceeding

Gardner seeks relief through a petition for a writ of *habeas corpus* under 28 U.S.C. § 2254, which provides relief "in behalf of a person in custody pursuant to the judgment of a State court *only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.*" 28 U.S.C. § 2254 (a). (Emphasis added.) Claims regarding conditions of confinement do not meet this requirement and cannot be decided in a *habeas corpus* proceeding. *See Malchi v. Thaler*, 211 F.3d 953, 959 (5th Cir. 2000) (state prisoner cannot state a claim for unconstitutional conditions of confinement in a *habeas corpus* petition unless granting the relief sought "inevitably" affects the duration of his sentence); *Orellana v. Kyle*, 65 F.3d 29, 31 (5th Cir. 1995) (*per curiam*) (if a favorable resolution of the action would not automatically entitle the prisoner to release, the proper vehicle is § 1983). Gardner's claim regarding the conditions of his confinement will therefore be dismissed without prejudice for failure to state a claim upon which *habeas corpus* relief could be granted.

### Conclusion

For the reasons set forth above, the motion by the State to dismiss the instant petition for a writ of *habeas corpus* will be granted. Gardner's claims challenging his original plea and sentences will be dismissed with prejudice as time-barred under 28 U.S.C. § 2244(d) and, alternatively, with prejudice as procedurally defaulted, as he did not raise those claims in the

state's highest court.   In addition, Gardner's claims challenging the revocation of his PRS will

be dismissed with prejudice for lack of merit, or, in the alternative, without prejudice for failure

to exhaust state court remedies.   His claims regarding the conditions of his confinement will be

dismissed without prejudice for failure to state a valid *habeas corpus* claim.   Finally, Gardner's

request for an evidentiary hearing will be denied.   A final judgment consistent with this

memorandum opinion will issue today.

       **SO ORDERED**, this, the 1st day of June, 2023.

/s/ Michael P. Mills
UNITED STATES DISTRICT JUDGE
NORTHERN DISTRICT OF MISSISSIPPI
